UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| David Magwood, Jr., | ) |
| Plaintiff, | ) Case No. 2:19-cv-2277-RMG |
| v. | ) |
| Rusty Fowler, South Carolina Department of Natural Resources, | ) ORDER |
| Defendants. | ) |

This matter is before the Court upon the Report and Recommendation ("R & R") of the Magistrate Judge. (Dkt. No. 37). For the reasons set forth below, the Court adopts the R & R as the Order of the Court.

I. **Background**

Plaintiff, David Magwood, Jr., brings a Section 1983 excessive force claim against Defendants Rusty Fowler and the South Carolina Department of Natural Resources ("DNR") along with state law claims against Defendant Fowler for negligence, assault and battery, and emotional distress. The claims arise out of an April 4, 2016 traffic stop conducted by Defendant Fowler while he was employed with DNR. (Dkt. Nos. 1-3; 26-4 at 2-3). Plaintiff alleges that during the traffic stop, Defendant Fowler blocked Plaintiff's path of travel with his vehicle and aimed a handgun at Plaintiff's body. (Dkt. No. 1-2 at 3). On November 20, 2020, Defendants filed a motion for summary judgment. (Dkt. No. 26). Plaintiff filed a response in opposition and Defendants filed a reply. (Dkt. Nos. 29; 36). On May 19, 2021, the Magistrate Judge issued an R & R recommending the Court grant Defendants' motion for summary judgment. (Dkt. No. 37). Plaintiff filed

1

objections to the R & R and Defendants' filed a Response to Plaintiffs' objections.  (Dkt. Nos. 39; 41). The matter is ripe for the Court's review.

II. **Legal Standard**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *US. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id. quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with

this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). In the absence of any specific objections, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Plaintiff filed objections, and the Court will review the R & R *de novo*.

### III.    Discussion

Upon a careful review of the record, the R &R, and Plaintiffs' objections to the R & R, the Court finds the Magistrate Judge comprehensively analyzed the issues to determine that Plaintiff's Amended Complaint should be dismissed on summary judgment. (Dkt. No. 37). Defendants seek to dismiss all of Plaintiff's claims and set forth several arguments such as: DNR is a state agency that is immune from suit pursuant to § 1983; Defendant Fowler is entitled to qualified immunity on the § 1983 claim; Plaintiff's state law claims against Defendant Fowler are barred by the South Carolina Tort Claims Act and the statute of limitations; and Plaintiff's state law claims fail as a matter of law. (Dkt. No. 26-1). Plaintiff's opposition motion does not address Defendants' arguments for the dismissal of his § 1983 claims against DNR and his state-law claims. Plaintiff argues that the § 1983 claim is his "true concern." (Dkt. No. 29 at 9).

The Magistrate Judge construed Plaintiff's failure to address certain of Defendants' arguments on summary judgment and Plaintiff's statement emphasizing his interest in his § 1983 claim as Plaintiff's concession to the dismissal of his § 1983 claim against DNR and his state-law claims. *Matusiewicz v. Florence Cty. Sheriff's Off.*, No. 416CV01595DCCKDW, 2019 WL 3416616, at

3

*8 (D.S.C. May 30, 2019) ("Where a party fails to respond to the opposing party's argument in support of the opposing party's motion for summary judgment, the party who fails to respond will be found to have conceded to that argument.").[1] The Court agrees with the R & R that summary judgment is proper as to Plaintiff's § 1983 claim against DNR and Plaintiff's state law claims for negligence, assault and battery, and emotional distress. Thus, Plaintiff's sole remaining claim is the § 1983 excessive force claim against Defendant Fowler.

Upon a careful review of the record in a light most favorable to Plaintiff, the Court finds the Magistrate Judge correctly determined that Plaintiffs' § 1983 excessive force claim against Defendant Fowler is subject to dismissal on summary judgment because Defendant Fowler is entitled to qualified immunity. On April 4, 2016, Plaintiff and Stacey Way met up to run their dogs after coyotes near the Springtown Long-Rang Hunting Club. (Dkt. No. 26-2 at 2-4). The two were driving in separate vehicles and some point, Mr. Way separated from Plaintiff. (*Id.*). Mr. Way testified it was "late evening." (Dkt. No. 26-2 at 6).

Plaintiff testified that while he was turning around, a man approached Plaintiff and told him to get off his property. (Dkt. No. 26-1 at 3). Defendant Fowler testified that he received a phone call from an adjoining property owner informing Fowler that her brother had witnessed someone hunting on her property. (Dkt. No. 29-4 at 4). Plaintiff testified that while travelling down the main road, a dark vehicle pulled in front of Plaintiff's vehicle. (Dkt. No. 29-1 at 3). Plaintiff testified that Defendant Fowler stepped out of the vehicle with a weapon, flashed a dark colored wallet, and stated to Plaintiff "what [are you] doing on this property?" and "I'm tired of you people always on my property." (*Id.*). Defendant Fowler was dressed in civilian clothes and was in an

---

[1] *Report and Recommendation adopted by*, No. 4:16-CV-01595-DCC, 2019 WL 3413385, at *1 (D.S.C. July 29, 2019).
.

undercover vehicle. (Dkt. Nos. 26-4 at 3-4; 29-1 at 4). Plaintiff testified Defendant Fowler approached Plaintiff's vehicle with a gun, asked Plaintiff to get out of the vehicle with the weapon pointed at him, opened up Plaintiff's door, and told Plaintiff to go to the front of the vehicle and not to move. (Dkt. No. 29-1 at 3-4).

Plaintiff testified he called out on the "Zello app" on his phone to other people about the stop. (*Id.* at 4). Mr. Way testified he heard Plaintiff's call on Zello approximately five minutes after he and Plaintiff parted ways. (Dkt. No. 26-2 at 5). Witnesses arrived at the scene including Mr. Way. (Dkt. Nos. 26-3 at 4; 26-4 at 5; 26-2 at 5-6). Mr. Way testified that when he arrived at the scene, Defendant Fowler's gun was in the holster located on his right side. Mr. Way testified Defendant Fowler did not draw the gun while Mr. Way was there. (Dkt. No. 26-2 at 6-7).

Plaintiff argues that Defendant Fowler's actions constitute an excessive force claim pursuant to 42 U.S.C. § 1983. The Fourth Circuit has recognized "excessive-use-of-weapons" claims as a "species" of excessive force claims. *Bellotte v. Edwards*, 629 F.3d 415, 424 (4th Cir. 2011). This type of claim is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The objective reasonableness standard requires "careful attention to the facts and circumstances of each particular case." *Id.* at 396. Factors helpful to the analysis include "the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. A reviewing court may not employ the "20/20 vision of hindsight" and must make "allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving." *Id*. at 396-397. "The intent or motivation of the officer is irrelevant; the question is whether a reasonable officer in the

5

same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.2d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 396-97).

Viewing the evidence in a light most favorable to Plaintiff, the Magistrate Judge concluded that at the time Defendant Fowler conducted the traffic stop, it was objectively reasonable for Defendant Fowler to draw his gun toward Plaintiff as Defendant Fowler believed Plaintiff had been hunting on private property directly prior to the stop. (Dkt. No. 37 at 9). Yet, because Defendant Fowler likely stopped Plaintiff for a minor offense and the record does not contain evidence Plaintiff displayed a gun during the traffic stop, or that Plaintiff resisted any of Defendant Fowler's directives during the traffic stop, a jury could determine that it was not objectively reasonable for Defendant Fowler to continue to point his weapon at Plaintiff for approximately five minutes, amounting to a violation of Plaintiff's Fourth Amendment rights. (*Id.* at 10). This Court agrees with the findings of the Magistrate Judge.

Defendants argue Defendant Fowler is entitled to qualified immunity as to Plaintiff's § 1983 claim because the law was not clearly established such that Defendant Fowler could have understood that his conduct was violating Plaintiff's constitutional rights. (Dkt. No. 26-1 at 10). Qualified immunity shields police officers who commit constitutional violations from liability when, based on "clearly established law" they "could reasonably believe that their actions were lawful. *Est. of Jones by Jones v. City of Martinsburg, W. Virginia*, 961 F.3d 661, 667 (4th Cir. 2020), *as amended* (June 10, 2020) (citing *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017). When determining whether an officer is entitled to summary judgment based on qualified immunity, courts engage in a two-pronged inquiry. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). The first prong concerns whether the facts, viewed in a light most favorable to the non-moving party, demonstrate that the officer's conduct violated a federal right. *Id.* (citing

*Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong concerns whether the "right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." *Smith*, 781 F.3d at 100. A right is "clearly established" if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

District judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers . . . the court need not consider the other prong of the qualified immunity analysis. *Id.*; *Torchinsky v. Siwinski, 942 F.2d 257, 260* (4th Cir. 1991).

The Magistrate Judge conducted a comprehensive analysis of Fourth Circuit case law as to excessive-use-of-weapons claims and the application of qualified immunity. (Dkt. No. 37 at 12-14). *See Gunsay v. Mozayeni*, 695 F. App'x 696, 701 (4th Cir. 2017) (finding police officers entitled to qualified immunity when officers approached suspect with guns pointed, removed suspect from car, forced her to ground, and arrested suspect pursuant to two felony warrants and explaining Plaintiffs failed to identify any decision by the Supreme Court or the highest court in Maryland clearly establishing that, at the time of the incident, the officers' actions violated the Fourth Amendment); *Bellotte v. Edwards*, 629 F.3d 415 (4th Cir. 2011) (granting officers qualified immunity as to Plaintiffs' excessive use of weapons claim when officers entered home of suspected child pornographer on a no-knock warrant with guns pointed, reasoning officers had good reason to fear for their safety because they were walking into an unsecured room and noting they withdrew their weapons as soon as they realized the plaintiff did not pose an immediate threat to safety; *Taft*

7

*v. Vines*, 70 F.3d 304, 320 (4th Cir. 1995) ("investigating officers may take such steps as are reasonably necessary to maintain the status quo and to protect their safety during an investigative stop); *Foote v. Dunagan*, 33 F.3d 445, 448 (4th Cir. 1994) ("whereas here, an officer has been informed by a radio dispatcher that the owner of a vehicle is an armed and dangerous 'Rambo type' and that he should approach the vehicle with caution, it unquestionably is reasonable for the officer to draw his weapon when approaching the vehicle to question its driver."); *United States v. Sinclair*, 983 F.2d 598, 602-03 (4th Cir. 1993) (finding it was reasonable to draw weapons when stopping suspected drug traffickers where officers had no reason to believe were armed and dangerous); *United States v. Taylor*, 857 F.2d 210, 213-4 (4th Cir. 1988) ("although approaching a suspect with drawn weapons [is an] extraordinary measure, [], such [a] police procedure, [] [has] been justified in this circuit as a reasonable means of neutralizing potential danger to police and innocent bystanders.).

Upon a careful review of the Fourth Circuit case law on this issue, the Court agrees with the Magistrate Judge that "there is no case that establishes that pointing a weapon at a suspect believed to be armed during an investigatory stop, where that suspect is not yet secure, violates the Fourth Amendment." (Dkt. No. 37 at 14-15).[2] Defendant Fowler is entitled to qualified immunity as to Plaintiff's § 1983 excessive force claim.

---

[2] Plaintiff objects to the R & R's finding that Defendant Fowler is entitled to qualified immunity because the law was not clearly established that pointing a gun at a suspect believed to be armed during an investigatory stop where that suspect is not yet secure violates the Fourth Amendment. (Dkt. No. 39). The objections are without merit as Plaintiff cites to Fourth Amendment case law that is factually distinguishable from Plaintiff's case and not dispositive. *See e.g.*, *Betton v. Blue*, 942 F.3d 184, 190-195 (4th Cir. 2019) (denying qualified immunity where multiple officers used battering ram to enter Plaintiff's home to execute search warrant without first announcing they were law enforcement and shot Plaintiff when he pulled a gun from his waistband); *Cooper v. Sheehan*, 735 F.3d 153, 160 (4th Cir. 2013) (denying qualified immunity where officers arrived at Plaintiffs home and did not announce they were law enforcement and shot Plaintiff when he heard a noise outside and went to investigate with a shotgun; *Parks v. Shiflett*, 250 F.3d 843, 848-49, 853

## IV. Conclusion

For the reasons stated above, the Court **ADOPTS** the R & R as the Order of the Court. (Dkt. No. 37). Defendants' motion for summary judgment is **GRANTED**. (Dkt. No. 26).

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

July 8, 2021
Charleston, South Carolina

---

(4th Cir. 2001) (denying qualified immunity when multiple officers handcuffed Plaintiff and then kicked him and threw him against the wall and ground and twisted Plaintiff's arm behind her back, threw her up against a building, handcuffed her, and then sprayed her twice in the eyes at close range with Oleoresin Capsicum.